## Shauntee v. Poole.

### (Decided December 18, 1923.)

### Appeal from Daviess Circuit Court.

1. **Easements—On Partition by Joint Owners Right of Passway Impliedly Granted.**—In partition by deeds, where there is no express grant of a right of passway over other property being at the same time partitioned, there is an implied grant of the use of an existing passway over the other tracts for the benefit of a tract conveyed, if there is a reasonable necessity for such use, and such right runs with the title so conveyed.

2. **Easements—Judgment Restraining Obstruction Held Not to Prohibit Erection of Gates.**—A judgment adjudging an easement over land and enjoining defendant from obstructing the same or interfering with its use in such manner "as to impede or stop the ingress and egress to and from said public highway," held not to prohibit the erection and use of gates.

E. B. ANDERSON and W. FOSTER HAYES for appellant.

AUD & HIGDON for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

Prior to January, 1907, George Shauntee was the owner of a tract of 105 acres of land in Daviess county. He then conveyed the same to his five sons, Thomas, Abram, Benjamin, Randall and Stephen, an undivided one-fifth to each.

In September, 1908, the sons by agreement partitioned the same among themselves, each receiving 21 acres, and made deeds accordingly.

On that portion of the land conveyed in the voluntary partition to Thomas Shauntee was a residence, and at the date of the deed from the father and of the partition deeds between the brothers there was a well-defined passway running in a northernly direction from that house to a public road some 400 yards distant, and that passway ran for a short distance across the land conveyed in the partition to Ben Shauntee, and for the balance of the way to the public road over the lands conveyed to Randall Shauntee.

In the deeds between the brothers there was no reference to any passways or easements of any kind going with or being appurtenant to the several tracts partitioned.

The passway in question was used continuously by Thomas Shauntee from the time of the partition until he parted with the title to appellee Poole to that part of the land partitioned to him, on February 19, 1921. Shortly after Poole moved on the tract and into the house appellant, Randall Shauntee, through whose tract the passway ran for some distance, constructed a wire fence across the same whereby it was obstructed.

This is an equitable action by Poole against him wherein he seeks a permanent injunction restraining him from further obstruction, and requiring him to remove the wire fence.

A temporary restraining order was issued, and on a final submission the chancellor below made the temporary order permanent, and the defendant appeals.

In the deed of partition to Thomas Shauntee there was no reference whatever to any passway or the right to the use of any passway over the other tracts of land then partitioned, but it was conveyed to him and his heirs and assigns forever, "with all the appurtenances thereon."

At the time of the conveyance by the father to his sons, and at the time of the partition deeds between the brothers the passway in question was open and visible, and had been in use for many years, and the question appears to be whether in such partition between joint owners where there is no express grant of a right of passway over the other property being at the time partitioned, there is an implied grant of the use of the passway over the other tracts for the benefit of the tract conveyed, there being a reasonable necessity for such use.

When George Shauntee owned the whole 105 acres the passway in question was used for the benefit of the whole property, and was so used by his sons while they were the joint owners thereof, and was therefore appurtenant to the whole tract of land at the time of the partition. The easement then being in existence for the benefit of the whole tract, and being apparently reasonably necessary for the enjoyment by Thomas Shauntee of the part conveyed to him, it would appear to be perfectly apparent that there was an implied grant to him of the use of the passway over the other tracts. On the face of the transaction, as we understand the map, it was essential to his enjoyment of the part conveyed to him that he should have the use of this passway, and that being true, an implication of a grant will be made by law for the benefit of and to run with the title to the tract so conveyed to him.

In the very recent case of Powers v. Ward, 200 Ky. 478, the doctrine is thus stated:

"The authorities are agreed, and such is the rule in this state, that where the owner of an entire tract of land, or of two or more adjoining parcels, employs a part thereof so that one derives from the other a benefit or advantage of a continuous and apparent nature, and sells the one in favor of which such continuous and apparent quasi easement exists, such easement being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication. 19 C. J. 914; Godman v. Jones, 180 Ky. 217; 200 S. W. 662; Skaggs v. Carr, 178 Ky. 849, 200 S. W. 27; Stone v. Burkhead, 160 Ky. 47, 169 S. W. 489."

In another late case, McWhorter v. Halcomb, 200 Ky. 498, wherein the right to a passway was involved under circumstances somewhat similar to the ones here, the rule was stated in this way as disclosed by the syllabus:

"Where one conveys a part of his estate he impliedly grants all those apparent or visible easements upon the part retained which were at the time used by the grantor for the benefit of the part conveyed, and which are reasonably necessary for the use of that part."

Neither of those cases was a partition case, either voluntary or by judicial proceeding. But certainly if the equitable doctrine laid down in them is applicable between strangers it would seem to apply with still greater force to a voluntary partition between brothers who were joint owners.

But it is urged by appellant's counsel there was no necessity for the use of the passway in question by the occupant of the Tom Shauntee land, because there was along the west or southwest line of the tract conveyed to Tom Shauntee what is called the "Riley lane" which was in use at the time of the partition, and which afforded to the occupant of that land an outlet to a public road. The evidence discloses that there had been for a long number of years a narrow lane running along the southwest line of the Tom Shauntee tract leading from a schoolhouse in the neighborhood to a public road, but that the schoolhouse had been removed to another point and at the time of the partition the lane had, because of its disuse, gotten into a practically impassable condition, and in fact had been used so little for a long period that small trees and bushes had grown up in it, and that as a matter of fact it was wholly impracticable to use in hauling a load, and was shortly thereafter closed up.

Without going into the details of the evidence as to this lane, it is apparent from the evidence it was a wholly impracticable route out to the public highway from the Tom Shauntee tract, and furnished no reasonable opportunity for one to get to such highway, particularly with loads of produce going to market.

An inspection of the evidence is convincing that the passway in question over the tract of land of the appellant was reasonably necessary to the enjoyment of the Tom Shauntee tract.

Lastly, it is argued for appellant that the judgment should be reversed because it prohibits appellant from the erection and use of gates at the points where it enters and leaves his premises. We do not so interpret the judgment. As we read and understand it it adjudges to appellee an easement over appellant's land and perpetually

enjoins appellant from obstructing the passway so as to interfere with the travel of appellee and his family, or those who have business to travel same in going to and coming from appellee's residence, and from obstructing the same or interfering with its use in such manner "as to impede or stop the ingress and egress to and from said public highway."

A fair interpretation of this does not mean that it prohibits the use of gates so as to protect appellant's property at the points where the passway enters his property and leaves it, and particularly is this true in the light of the evidence that gates have heretofore been maintained at those places.

That there was an implied grant of the right to the use of this passway appurtenant to the tract conveyed to Thomas Shauntee we do not doubt.

Judgment affirmed.